UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                              :
PAUL E. FALZONE,                              :    CASE NO. 1:10CV02918
                                              :
        Plaintiff,                            :
                                              :
    v.                                        :    OPINION & ORDER
                                              :    [Resolving Doc. Nos. 32, 53, 64, 69, 97, 98,
JOHN M. LICASTRO, *et al.*,                   :    101, 112, 118]
                                              :
        Defendants.                           :
                                              :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Paul E. Falzone—the former Chief of Police of the Village of Bretanahl, Ohio (the Village)—filed this civil-rights lawsuit against the Village, John M. Licastro, Christopher McDonald, Gregory Barton, Thomas J. Neelon, Richard Dolbow, Julie Kreiner, and Dennis Sweet (collectively, Defendants). Falzone alleges that Defendants conspired to violate his rights under state and federal law. Generally, Falzone alleges that Defendants initiated a criminal investigation and prosecution of him "[w]ithout admissible evidence of criminal activity, or probable cause of any criminal acts by" him. [Doc. 103, at 6.] He asserts claims (1) under 42 U.S.C. § 1983 for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights, (2) for age discrimination in violation of Ohio Revised Code § 4112.02, (3) for tortious interference with his contractual rights in violation of Ohio law, and (4) for malicious criminal prosecution.

The Village responds with a counterclaim against Falzone for $13,619.94 in overpaid wages.

Case No. 1:10-CV-2918
Gwin, J.

Defendants now move for summary judgment on Falzone's claims, *see* [Docs. 98, 101], and the Village moves for summary judgment on its counterclaim, *see* [Doc. 97]. For the following reasons, the Court will grant Defendants' motions for summary judgment.

I.

At the outset, the Court observes that Falzone has greatly complicated the Court's task. His ten-page-long opposition to summary judgment does not contain a single heading, is littered with unsupported conclusory allegations, eschews legal analysis for paragraph-long block quotes, and, with a couple of exceptions, either fails to identify the portions of the record on which his claims depend or cites "parts of . . . the record," Fed. R. Civ. P. 56(c)(1)(A), so voluminous that the Court can only wonder what it should be looking for. *See, e.g.*, [Doc. 103, at 2 ("And, such denials of procedurally mandated hearing were a continuing violation of Plaintiff's due process procedural rights, by the actions of the Village and the other Defendants, all as detailed in Plaintiff's Complaint, and related in Plaintiff's Deposition by Defendants." (citing, generally, a forty-five-page-long set of deposition excerpts)).]

Defendants, by carefully identifying where each of Falzone's sprawling allegations falls short, have sustained their burden to "show[] that there is no genuine dispute as to any material fact and [that they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Yet Falzone has completely failed in his obligation to oppose Defendants' motion for summary judgment by "citing to particular parts of materials" establishing a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A). For this reason alone, a grant of summary judgment to Defendants on Falzone's claims is appropriate.

Nevertheless, because the Court can, on its own, piece together enough of this poorly-

Case No. 1:10-CV-2918
Gwin, J.

developed record[1] to address in substance most of Falzone's claims, it will.

## II.

Plaintiff Falzone was the Defendant Village's Chief of Police from August 1994 until he resigned on February 28, 2009. A contract, renewed annually, governed the employment relationship.

In April 2007, Falzone learned that a gun was missing from the Village's evidence room. Because the police officer responsible for the evidence room—Sergeant Charles LoBello—was away for training, Falzone ordered Defendant Sergeant Barton to investigate the missing gun. Barton's investigation revealed that an evidence log book was missing from the evidence room.[2]

Barton told Falzone that he was going to seal the evidence room pending a further investigation. Falzone replied, "Well, do what you think you got to do until LoBello gets back." [Doc. 98-1.] And so Barton "tape[d] the room off." *Id.*

When LoBello returned from his training and saw that the evidence room had been sealed, he became upset. According to Plaintiff, Barton and LoBello were less-than-friends, and the two had "an argument about the tape." *Id.* Falzone sided with LoBello, observing that LoBello was "in charge of the evidence room" and ordering LoBello to "[t]ake the tape off." *Id.* Falzone told Barton to "[f]orget about doing this thing. Let LoBello do it." *Id.* Barton was unhappy with this resolution, but apparently dropped the issue.

Then, on May 4, 2007, Barton noticed that someone had discarded a large number of evidence items into a trash can outside the department. *Id.* According to a report Barton submitted

---

[1] Plaintiff has apparently not deposed a single witness. *See* [Doc. 111.]

[2] The book was later found in a safe in Falzone's office.

-3-

Case No. 1:10-CV-2918
Gwin, J.

to Falzone, the trashed evidence items "would have been [recorded] in one of the missing evidence books." *Id.*

The record of evidence before this Court does not show what, if anything, happened over the next several months. It seems, however, that Barton and another Village officer—Defendant Christopher McDonald—were concerned that Falzone was "thwart[ing]" the police department's internal investigation into the missing evidence. [Doc. 101-4.] At some point, Defendant Barton began secretly recording his conversations with Falzone. Defendant McDonald, for his part, contacted the Cuyahoga County Sheriff's Office to share his concerns about the stalling internal investigation.

On October 24, 2007, the County Sheriff's Office reached out to the Ohio Bureau of Criminal Identification and Investigation (BCI), a state agency, asking for outside assistance. *Id.* BCI Special Agent and now Defendant Dennis Sweet was assigned to the request. *Id.* As part of his investigation, Sweet met with Falzone on May 13, 2008. [Doc. 101-2.] At that meeting, Falzone himself "supplied [Sweet] with a written request for assistance into the investigation." *Id.*

But seven months later, on December 12, 2008, Defendant Barton contacted Village Mayor and now Defendant John Licastro, complaining that Falzone "was attempting to interfere with the Ohio BCI Investigation of the evidence room issues." [Doc. 98-2.] Licastro decided to place Falzone "on paid administrative leave pending an investigation." *Id.* That same month, the Village Council "voted to approve [] an independent civil investigation of the administration of the police department." *Id.*

On February 24, 2009, and before the Village's investigation concluded, Falzone sent Licastro a letter of resignation. [Doc. 98-1.] Four days later, Falzone signed an agreement releasing

-4-

Case No. 1:10-CV-2918
Gwin, J.

the Village "its assigns, agents, elected officials, employees, representatives, attorneys and all persons acting by, through, under, or in concert with any of them, from any and all claims, demands, and liabilities whatsoever, whether known or unknown or suspected to exist by Falzone in connection with his employment with" the Village. *Id.* The release recites as consideration the Village's "acceptance of Falzone's voluntary retirement without notice." *Id.*

On August 12, 2009, a Cuyahoga County grand jury returned a two-count indictment against Falzone for obstructing official business and theft in office. A jury acquitted him at trial.

On these facts Falzone tries to base his sprawling claims.

### III.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed *must* support the assertion by: (A) citing to *particular parts of materials in the record* . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1) (emphases added).

"Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). But "the plain language of Rule [56(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

Case No. 1:10-CV-2918
Gwin, J.

on which that party will bear the burden of proof at trial." *Id.* at 323.

Before turning to Falzone's four claims, the Court will excise three defendants whose only connections to this case are the unsupported allegations in Falzone's complaint: Thomas J. Neelon, Richard Dolbow, and Julie Kreiner. Falzone asserts three claims against each, generally alleging that these defendants either "supplied false and unsupported information" to investigators (Neelon and Kreiner), or were "aware of Defendant Barton's unauthorized investigation of Chief Falzone" (Dolbow). [Doc. 10.] But Falzone has nothing more than his own suspicions to establish these allegations. His opposition to summary judgment doesn't even mention Neelon, Dolbow, or Kreiner, save the pro forma recitation of their names in the motion's title. Summary judgment for these defendants is appropriate.

The Court will also grant summary judgment to the Defendant Village. Falzone at least mentions the Village in his opposition to summary judgment, but his § 1983 claims against it fail because he has no evidence of a Village "policy or custom" at the source of his claimed injuries, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), and his age-discrimination claim fails because it expired in August 2009, more than a year before he filed his complaint, *see* Ohio Rev. Code § 4112.02(N) (setting a 180-day statute of limitations). (For the same reason, Falzone's identical age-discrimination claim against Defendant Licastro fails.)

The Court will address Falzone's remaining claims against the four remaining defendants in turn.

### A. Falzone's Tortious Interference With Contract Claims

Falzone alleges that Defendants Sweet, McDonald, and Barton tortiously interfered with his contract with the Village, in violation of Ohio law. But Falzone cannot assert this claim against

-6-

Case No. 1:10-CV-2918
Gwin, J.

Defendant Sweet—a state officer—without first obtaining a determination from the Ohio Court of Claims that Sweet is not entitled to immunity under Ohio law. *See* Ohio Rev. Code §§ 9.86, 2713.02; *Cameron v. Children's Hosp. Med. Ctr.*, 131 F.3d 1167, 1169-70 (6th Cir. 1997). This he has not done.

Nor does Falzone have sufficient evidence supporting a tortious-interference-with-contract claim against Defendants McDonald and Barton. In Ohio, "in order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995). Though Falzone's employment contract is apparently not in the record (a problem for Falzone by itself),[3/] Falzone's general allegation is that his discharge violated the contract.

Even assuming that is so, Falzone cannot overcome the fact that he *voluntarily* resigned. *See* [Doc. 98-1, at PageID 739-40.][4/] Voluntary resignation "breaks [the] chain of causation that would have linked any alleged interference" to the contract's breach. *Thompson v. City of Columbus*, No. C2-98-822, 2001 WL 1681129, at *6 (S.D. Ohio Sept. 26, 2001). The most Falzone can establish on this record is that McDonald and Barton sparked an investigation which led, ultimately, to Falzone's placement on paid administrative leave. Two months after that, Falzone

---

[3/]Startlingly, even though all parties agree that Falzone *had* an employment contract, none have identified where, if anywhere, it may be found in the record. Accordingly, Falzone has nothing with which he can prove the contract's terms, or its breach.

[4/]Falzone makes some broad allegation of "constructive discharge," *see* [Doc. 10, at 17], but fails to "adduce evidence to show that 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." *Thompson v. City of Columbus*, No. C2-98-822, 2001 WL 168112, at *9 (S.D. Ohio Sept. 26, 2001) (emphases and internal quotation marks omitted).

-7-

Case No. 1:10-CV-2918
Gwin, J.

voluntarily resigned. Without more, Falzone could not prove that McDonald or Barton caused any breach of Falzone's employment contract. Accordingly, Defendants Sweet, McDonald, and Barton are entitled to summary judgment on Falzone's tortious-interference-with-contract claims.

### B. Falzone's Malicious Prosecution Claims

Falzone also alleges that Defendants Licastro, Sweet, McDonald, and Barton are all liable for malicious prosecution for their participation in the investigation that led to Falzone's August 2009 indictment.[5] These claims also fail.

To succeed on "a federal malicious prosecution claim, it is clear that a plaintiff must show, at a minimum, that there was no probable cause to justify his arrest and prosecution." *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (internal quotation marks omitted); *accord Deoma v. Shaker Heights*, 68 N.E.2d 72, 77 (Ohio Ct. App. 1990) ("In order to state a cause of action for malicious prosecution in Ohio, the plaintiff must allege . . . lack of probable cause for the filing of the prior lawsuit . . . ."). But "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002); *see also Deoma*, 68 N.E.2d at 77 ("[W]hen an indictment has been returned by the grand jury, the plaintiff . . . must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular.").

Falzone has nothing with which to assail the grand jury's finding of probable cause, other than his argument that the grand jury was incorrect. That is insufficient. Accordingly, Defendants Licastro, Sweet, McDonald, and Barton are entitled to summary judgment on Falzone's malicious-

---

[5] Falzone does specify whether he is asserting a federal- or state-law malicious-prosecution claim. Nevertheless, Falzone could not succeed on either.

-8-

Case No. 1:10-CV-2918
Gwin, J.

prosecution claims.

### C. Falzone's § 1983 Claims

Finally, Falzone alleges that Defendants Licastro, Sweet, McDonald, and Barton violated his First, Fourth, Fifth, and Fourteenth Amendment rights. Falzone seeks damages under 42 U.S.C. § 1983. Each of Falzone's § 1983 claims fail.

Falzone's First Amendment claims are not well-articulated. In his complaint, Falzone alleges that in 2007 and 2008 he was "running for the office of Sheriff of Cuyahoga County, Ohio," [Doc. 10, at 3], and that Defendant Licastro "instructed Falzone to avoid openly campaigning for election in and around the [Village] Police Department," *id.* at 13. Falzone "obeyed and desisted," *id.*, but lost the March 2008 primary election. Falzone appears to argue that Defendant Licastro (along with, somehow, Defendants Sweet, McDonald, and Barton) violated his First Amendment rights when Licastro ordered him not to campaign while on duty.

Falzone's First Amendment claims are too late. The Court "look[s] to state law to determine the applicable statute of limitations for 42 U.S.C. § 1983 claims." *Johnson v. Frasch*, 173 F.3d 429, at *2 (6th Cir. 1999) (unpublished table decision). "For civil rights actions arising in Ohio, the applicable period is two years." *Id.* Because the First Amendment violations Falzone alleges occurred before, at the latest, March 2008, the statute of limitations expired in March 2010, nine months before he filed this lawsuit.

Furthermore, Falzone's Fourth Amendment claims are nothing more than a rehash of his claims of malicious prosecution which, as explained above, are unsupported. And his Fifth Amendment claims are not properly directed at state and local actors. *See Scott v. Clay Cnty., Tennessee*, 205 F.3d 867, 873 n.8 (6th Cir. 2000).

-9-

Case No. 1:10-CV-2918
Gwin, J.

Finally, Falzone's Fourteenth Amendment procedural-due-process claims—premised on his relegation to paid administrative leave—are also insufficient. "[T]he suspension of even a tenured public employee with pay avoids due process problems entirely." Harris v. Detroit Pub. Sch., 245 F. App'x 437, 444 (6th Cir. 2007).

Accordingly, Defendants Licastro, Sweet, McDonald, and Barton are entitled to summary judgment on Falzone's § 1983 claims, and, with that, all Defendants are entitled to summary judgment on each of Falzone's claims.

IV. The Village's Counterclaim

The Village, pursuant to Ohio Revised Code §§ 117.28 and 117.36, has asserted a counterclaim against Falzone for $13,619.94 in overpayments Falzone received as a result of the Village's miscalculation of, among other things, his wages. The Village has also moved for summary judgment on its claim. *See* [Doc. 97.] Falzone has moved—three times by three nearly identical motions, *see* [Docs. 53, 64, 69]—to dismiss the counterclaim.

In support of its motion, the Village points to an Audit Report by the Ohio Auditor of State finding that $13,619.94 in public monies were illegally expended to Falzone. *See* [Docs. 97-1, 97-2.] Ohio law provides that such an audit report is, in a civil action to recover illegally paid public monies, "prima-facie evidence in determining the truth of the allegations." Ohio Rev. Code § 117.36.

Falzone, for his part, does not dispute that he was overpaid. Instead, he argues (1) that the Village's claim is barred by the applicable statute of limitations; and (2) that the Village cannot recover any illegally paid monies because he changed his position in reliance on the funds. Both of Falzone's arguments are incorrect.

Case No. 1:10-CV-2918
Gwin, J.

Ohio Revised Code § 117.28 provides that

> [w]hen an audit report sets forth that any public money has been illegally expended . . . the officer receiving the certified copy of the report . . . may, within one hundred twenty days after receiving the report, institute civil action in the proper court . . . for the recovery of the money . . . .

Ohio Rev. Code § 117.28. Falzone argues that § 117.28 bars actions for recovery of public monies brought more than one-hundred-twenty days after receipt of the auditor's report. He is wrong.

Section 117.28 is not a statute of limitations. *See* State ex rel. Holcomb v. Walton, 586 N.E.2d 176, 179 (Ohio Ct. App. 1990) ("[W]e find that R.C. 117.28 does not prevent the prosecuting attorney from bringing an action to recover illegally expended funds beyond the one-hundred-twenty-day period specified therein. The appropriate limitation period is the six years specified by R.C. 2305.07."). Rather, "[i]t simply imposes a legal and directory duty upon the officer requiring him to institute an action within the period of [120] days." City of Cleveland v. Legal News Publ'g Co., 144 N.E. 256, 258 (Ohio 1924) (interpreting Ohio's General Code § 286, a predecessor to Ohio Revised Code § 117.28).

Indeed, § 117.28 goes on to authorize Ohio's attorney general to "bring the action in any case where the officer [receiving the auditor's report] *fails* to do so within one hundred twenty days after the audit report has been filed." Ohio Rev. Code § 117.28. Accordingly, the Village has asserted its claim in time.

Furthermore, Falzone's defense—that he changed his position in reliance on the disbursement—is not cognizable in an action under Ohio Revised Code §§ 117.28 and 117.36. It is true that in a run-of-the-mill unjust-enrichment case, "If a payee receiving payment under a mistake of fact has, in good faith, changed his position or disbursed the money to another before he has received notice from the payer of the fraud or mistake, a recovery may not be had against him."

-11-

Case No. 1:10-CV-2918
Gwin, J.

*Firestone Tire & Rubber Co. v. Cent. Nat'l Bank of Cleveland*, 112 N.E.2d 636, 437-38 (Ohio 1953).

> But Section 117.36, under which the Village now proceeds, provides that
>
> In any action it is *sufficient for the plaintiff to allege in the petition so much of the factual information contained in the report of the auditor of state as relates to the claim or action against the defendant therein and that the amount claimed against the defendant is unpaid.* The plaintiff is not required to state separately and number in his petition any separate causes of action . . . upon whatever claims or circumstances based, since they are deemed to constitute a single cause of action; *nor is he required to set forth any other or further factual matter relating to his claim or action*."

In other words, the usual rule barring recovery from an unjustly enriched defendant who has changed his position in reliance on that enrichment does not apply in an action by a municipality to recover illegally expended public monies. Because Falzone has identified no genuine dispute about any fact material to the Village's counterclaim, the Court will grant summary judgment to the Village on that claim.

V.

For these reasons, the Court **GRANTS** Defendants' motions for summary judgment on Plaintiff's claims, [Docs. 98, 101], **DENIES** Plaintiff's motions to dismiss the Village of Bretanahl's counterclaim, [Docs. 53, 64, 69], and **GRANTS** the Village's motion for summary judgment on its counterclaim, [Doc. 97.] Defendant Sweet's motion to dismiss, [Doc. 32], and his motion to stay the case, [Doc. 118], are **DENIED** as moot. Falzone's motion for leave to add witnesses for trial,

Case No. 1:10-CV-2918
Gwin, J.

[Doc. 112], is **DENIED** as moot.[6]

     IT IS SO ORDERED.

Dated: March 4, 2012                 s/ *James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE

---

[6] Falzone's passing requests for sanctions and to extend the discovery deadlines are **DENIED**. The parties have had plenty of time to obtain discovery in this case and Falzone's squandering of it—he served unduly burdensome written discovery requests on Defendants, *see* [Doc. 63], and deposed no witnesses—is insufficient reason to give him more. Moreover, his request for sanctions is wholly unjustified.